**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AUDREY J. NIGLIO,                    )
                                     )
              Plaintiff,             )
                                     )        Civil Action No. 12-1583
       v.                            )
                                     )        Judge Nora Barry Fischer
CAROLYN W. COLVIN,                   )
Commissioner of Social Security,     )
                                     )
              Defendant.             )


**MEMORANDUM OPINION**


**I.    INTRODUCTION**

Audrey J. Niglio ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

review of the final determination of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for supplemental security income ("SSI") under Title

XVI of the Social Security Act, 42 U.S.C. §§ 1381 – 1383f ("Act").  This matter comes before

the Court on cross motions for summary judgment.  (ECF Nos. 10, 12).  The record has been

developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary

Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

**II.   PROCEDURAL HISTORY**

Plaintiff applied for SSI on December 8, 2009, claiming a disability onset of January 10,

2006.  (R. at 115 – 22).[1]  She claimed that her inability to work full-time allegedly stemmed from

diabetes, obesity, lack of education, a sleep disorder, and breathing problems.  (R. at 142).

---

[1]        Citations to ECF Nos. 6 – 6-8, the Record, *hereinafter*, "R. at __."

Plaintiff was initially denied benefits on April 21, 2010. (R. at 53 – 57). Per the request of Plaintiff, an administrative hearing was held on June 7, 2011. (R. at 24 – 46). Plaintiff appeared to testify, represented by counsel, and a neutral vocational expert also testified. (R. at 24 – 46). In a decision dated July 13, 2011, the ALJ denied Plaintiff the benefits sought. (R. at 9 – 23). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, but this request was denied on August 29, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 6).

Plaintiff filed her Complaint in this Court on November 1, 2012. (ECF No. 3). Defendant filed an Answer on January 7, 2013. (ECF No. 5). Cross motions for summary judgment followed. (ECF Nos. 10, 12). The matter has been fully briefed, and is ripe for disposition.

## III. STATEMENT OF FACTS

The facts relevant to the present case are limited to those records that were available to the ALJ when rendering his decision. (R. at 4 – 5, 21 – 23). All other records newly submitted[2] to the Appeals Council or this court will not be considered, here, and will not inform the decision of this court. *See Matthews v. Apfel*, 239 F. 3d 589, 592, 594 – 95 (3d Cir. 2001).[3]

### A. General Background

Plaintiff was born on May 7, 1965, was forty-four (44) years of age at the time of her

---

[2]    Exhibit 15F; R. at 309 – 17.

[3]    The Appeals Council may decline review of a claimant's case when the ALJ's decision is not at odds with the weight of the evidence on record. *Matthews*, 239 F. 3d at 592. In such a case, a district court can only review that evidence upon which the ALJ based his or her decision. *Id.* at 594 – 95. As a result, new evidence presented by a claimant to the Appeals Council, but not reviewed, is not within the purview of a district court when judging whether substantial evidence supported an ALJ's determination. *Id.* Such is the case at present. Additionally, Plaintiff failed to make the required showing under *Szubak v. Sec'y of Health and Human Serv.*, 745 F. 2d 831 (3d Cir. 1984), for remand to reconsider the case in light of newly submitted evidence not considered by the ALJ when making his decision. Therefore, the case will not be remanded for this purpose, and Exhibit 15F (R. at 309 – 17) will not be discussed.

application for benefits, and was forty-six (46) years of age at the time of her administrative hearing.  (R. at 28).  Plaintiff was a single mother with three of five children living in her home, as well as a boyfriend.  (R. at 28, 225).  Her boyfriend received disability benefits.  (R. at 29).  Plaintiff subsisted on welfare benefits.  (R. at 29).  She last worked in 1995 as a laborer in a plastics packing operation.  (R. at 30, 142).  Plaintiff quit the job because "it was too hard," and she was trying to care for her children.  (R. at 30).  There is no record of Plaintiff seeking work since that time.  Plaintiff completed the tenth grade, but did not obtain further education.  (R. at 29 – 30).  She had been placed in regular classes, and was able to read and write.  (R. at 29 – 30).  Plaintiff never learned to drive an automobile.  (R. at 29).

   B.  Treatment History

   On November 17, 2009, just prior to Plaintiff's application for SSI[4], Plaintiff's primary care physician Sheila Burick, M.D. examined Plaintiff for ongoing complaints of back pain, for which she had previously been prescribed Ultram, Flexeril, stretching, and massage.  (R. at 217 – 18).  Plaintiff was noted to have been recently diagnosed with diabetes, and was prescribed Metformin for treatment.  (R. at 217).  Plaintiff was to monitor her blood sugar levels and drastically change her diet.  (R. at 217).  Plaintiff was informed that losing weight and exercising would help her back.  (R. at 217).

   Plaintiff continued to complain of back pain in November 2010, and Dr. Burick ordered diagnostic imaging studies.  (R. at 286).  Plaintiff claimed that her pain was 7/10.  (R. at 286).  Plaintiff had a negative leg raising test.  (R. at 286).  Her diabetes was noted to be under control.  (R. at 286).

   On March 29, 2010, Mohamad Abul-Ela, M.D. completed a physical consultative

---

[4]      Under the applicable Social Security Regulations, in order for Plaintiff to be found eligible for SSI, she must be able to demonstrate that she was disabled by or after December 8, 2009, the time of her application for benefits, and before July 13, 2011, the date of the Commissioner's final decision.  20 C.F.R. § 416.335.

examination of Plaintiff on behalf of the Bureau of Disability Determination. (R. at 224 – 31). Dr. Abul-Ela noted that Plaintiff's primary complaints were of left hip pain and shortness of breath for the past several months. (R. at 224). Plaintiff complained of hip pain, rather than back pain, with exertion. (R. at 224). She claimed that as a result of shortness of breath and hip pain, she could not walk more than one block or climb more than ten or twelve steps. (R. at 224). Plaintiff also informed Dr. Abul-Ela of a history of type II diabetes, obesity, and sleep apnea. (R. at 224). Plaintiff denied any other symptoms. (R. at 224). Plaintiff informed Dr. Abul-Ela that she had also been recently diagnosed with bronchial asthma, and also admitted that she smoked one to one-and-one-half packs of cigarettes per day. (R. at 225).

Dr. Abul-Ela observed Plaintiff to be overweight, but with normal gait and balance. (R. at 226). She had no difficulty getting on and off the examination table. (R. at 226). Plaintiff had full sensory and motor function, and deep tendon reflexes were present. (R. at 227). Plaintiff was pleasant and cooperative throughout her examination. (R. at 226). Dr. Abul-Ela diagnosed left hip pain, chronic in nature, non-insulin dependent type II diabetes, obesity, and questionable bronchial asthma. (R. at 227).

As a result of these impairments, Dr. Abul-Ela concluded that Plaintiff would be unable to frequently lift and carry more than two or three pounds. (R. at 228). Plaintiff could stand and walk no more than one hour or less of an eight hour work day. (R. at 228). She could sit no more than fifteen minutes at a time. (R. at 228). Additionally, Plaintiff could only occasionally climb, and could never bend, kneel, stoop, or crouch. (R. at 228).

On April 6, 2010, state agency evaluator Edward Jonas, Ph.D., completed a Psychiatric Review Technique. (R. at 234 – 46). Following a review of Plaintiff's medical record, Dr. Jonas determined that the evidence did not support the finding of any mental impairments. (R. at 234 –

46).  He did indicate, however, that there were non-mental impairments.  (R. at 234 – 46).

Also on April 6, 2010, state agency evaluator Paul Fox, M.D. completed a Physical Residual Functional Capacity ("RFC") Assessment of Plaintiff.  (R. at 247 – 53).  Following a review of the medical record, he concluded that the evidence supported finding impairment in the way of morbid obesity, type II diabetes, and obstructive sleep apnea.  (R. at 247 – 53).  As a result, Plaintiff would be limited to occasionally lifting and carrying no more than twenty pounds, and frequently lifting and carrying ten pounds.  (R. at 248).  Plaintiff could stand and walk at least two hours of an eight hour work day, and could sit for six hours.  (R. at 248).  Plaintiff could occasionally climb, balance, stoop, and crouch, but could never kneel or crawl.  (R. at 249).  She would need to avoid extreme heat and exposure to fumes, odors, dusts, gases, and poor ventilation.  (R. at 249).

In his narrative statement, Dr. Fox noted that Plaintiff complained of significant limitation in daily activities, yet treatment for her impairments has been routine and conservative.  (R. at 252).  Further, Dr. Abul-Ela's limitations findings were believed to be unsupported by the medical record as well as Dr. Abul-Ela's own examination notes.  (R. at 253).  Dr. Abul-Ela's findings were considered to be an over-estimate of Plaintiff's limitation.  (R. at 253).

On June 29, 2010, Plaintiff was examined by Dr. Burick.  (R. at 283).  Dr. Burick noted that Plaintiff was not taking any medication for her diabetes at that time.  (R. at 283).  Plaintiff also continued to complain of back pain of 8/10.  (R. at 283).  Plaintiff was prescribed a small quantity of Vicodin, and was advised to take Ultram.  (R. at 283).  Diagnostic imaging was recommended.  (R. at 283).

On July 23, 2010, Plaintiff obtained an MRI of her lumbar spine per the orders of Dr.

Burick.  (R. at 262).  The study revealed the presence of mild disc degeneration at L5 – S1 with slight annular bulge, but no focal herniation.  (R. at 262).  Marked L5 bilateral facet arthropathy was noted, as was mild stress injury within the pedicle of L5 and S1, bilaterally.  (R. at 262).

On September 27, 2010, Dr. Burick examined Plaintiff and reviewed the MRI of Plaintiff's lumbar spine.  (R. at 281).  Plaintiff complained of worsening back pain.  (R. at 281).  Dr. Burick recommended using a back brace and engaging in exercise.  (R. at 281).  Poor posture and obesity were cited as exacerbating factors.  (R. at 281).  Plaintiff was also advised to cease smoking.  (R. at 281).

On November 23, 2010, Plaintiff was examined by pain specialist John D. Wrightson, M.D.  (R. at 255 – 57).  Plaintiff's primary complaint was lower back pain.  (R. at 255).  She described her pain as sharp and constant, and standing, bending, and walking exacerbated the pain.  (R. at 255).  Prescription pain medication and rest alleviated Plaintiff's pain, however.  (R. at 255).  At the time of the examination, Plaintiff was not taking any medication.  (R. at 255).  She had never engaged in physical therapy.  (R. at 255).

Upon examination, Dr. Wrightson observed that Plaintiff's lumbar spine was unremarkable.  (R. at 256).  Lower back palpation was normal, although there was moderate tenderness and spasm on the left at L4 and L5.  (R. at 256).  Lumbar flexion was normal; however, extension, rotation, and lateral flexion were reduced.  (R. at 256).  Plaintiff's muscle tone and sensation were normal, but her muscle strength in the lower extremities was only 4/5.  (R. at 256).  Plaintiff's reflexes were normal, and straight leg raising was negative.  (R. at 257).

Dr. Wrightson diagnosed lumbar facet syndrome, lumbar spine pain, lumbar disc displacement/herniation, and lumbar nerve root compression.  (R. at 257).  Plaintiff was to engage in physical therapy to include walking for thirty minutes and climbing stairs for ten

minutes, and was to take prescription Prednisone and Mobic.  (R. at 257).  Dr. Wrightson also recommended that Plaintiff receive injections.  (R. at 257).

On December 27, 2010, Plaintiff was examined by Dr. Burick.  (R. at 279).  Plaintiff continued to complain of pain in the back and legs.  (R. at 279).  Plaintiff did not receive injections per the recommendations of Dr. Wrightson due to an alleged fear of needles.  (R. at 279).  Plaintiff claimed that her back brace did not help her pain.  (R. at 279).  She was hesitant to attempt physical therapy.  (R. at 279).  Plaintiff was not taking her diabetes medication consistently due to forgetfulness, although Dr. Burick indicated that her diabetes was mild.  (R. at 279).  Plaintiff was to start monitoring her blood sugar more often.  (R. at 279).  Dr. Burick found that Plaintiff was stable overall, and neurologically intact; she did experience some lumbar pain with palpation.  (R. at 279).

Plaintiff was not seen again by Dr. Burick until March 28, 2011.  (R. at 292).  Plaintiff informed Dr. Burick that she was "feeling well overall."  (R. at 292).  Plaintiff was still obese and still needed to lose more weight.  (R. at 292).  There were no findings regarding Plaintiff's back or leg pain, and an examination of Plaintiff's extremities was negative.  (R. at 292).

On May 27, 2011, Plaintiff visited pain specialist Ashraf Razzak, M.D.  (R. at 303 – 07).  Dr. Razzak recorded Plaintiff's primary complaint to be lower back pain.  (R. at 303).  Plaintiff claimed that the pain could be chronic, intermittent, and recurrent.  (R. at 303).  It was allegedly exacerbated by most types of movement or exercise.  (R. at 303).  Pain also radiated to the left leg.  (R. at 303).  Plaintiff admitted that she had not followed through with pain management, injections, or physical therapy in the past.  (R. at 303).  She also equivocally indicated that she had "failed" physical therapy in the past.  (R. at 305).  Plaintiff claimed that she had last been prescribed Vicodin by Dr. Burick one year prior to her examination with Dr. Razzak.  (R. at

303).

Upon observation and examination of Plaintiff, Dr. Razzak recorded some numbness in the left leg, normal coordination, stable gait, equivocal notations regarding the normalcy of Plaintiff's gait, normal muscle function, normal posture, normal strength, normal muscle tone, active – but limited – range of motion in the back, normal motor function, normal reflexes, aching, cramping, spasm, tenderness, positive straight leg raising, normal sleep behavior, normal concentration, and normal affect. (R. at 303 – 06). Plaintiff did not have paresthesia, joint stiffness, fatigue, abnormal behavior, abnormal thinking, abnormal antisocial behavior, distractibility, or disturbance of memory. (R. at 303 – 04). Dr. Razzak did not have the benefit of reviewing Plaintiff's lumbar spine MRI. (R. at 305). Dr. Razzak diagnosed lumbago, lumbosacral spondylosis, degenerative joint disease, spinal stenosis of the lumbar region, spondylolisthesis, sacroiliitis, and type II diabetes. (R. at 306). Dr. Razzak recommended physical therapy, weight loss and change of diet, cessation of smoking, limitation of opiate use, exercise, injections, and general medication compliance. (R. at 306 – 07).

C. Administrative Hearing

In response to questioning by the ALJ, Plaintiff testified at her hearing that she believed she could no longer work as a result of back pain radiating into her left leg. (R. at 31). She could sit for no more than fifteen minutes. (R. at 32). She could walk one quarter of a mile before requiring a five minute break. (R. at 34). She could stand for between twenty and thirty minutes at a time. (R. at 34, 41). Plaintiff managed to sleep only five or six hours per night. (R. at 40). She would take frequent naps during the day, as a result. (R. at 41).

In spite of her claimed pain, Plaintiff provided no excuse for failing to attempt physical therapy. (R. at 32). She never attempted to receive injections for her pain due to an alleged fear

of needles.  (R. at 32).  She did not follow through with treatment at a pain clinic.  (R. at 33).

Plaintiff used her back brace "a couple hours a day," but claimed that it did not provide much

relief.  (R. at 32).  Plaintiff's pain medication allegedly provided little help.  (R. at 33).

Plaintiff also informed the ALJ that she had asthma that made it difficult for her to climb

stairs.  (R. at 34).  She did use an inhaler two or three times per day.  (R. at 34 – 35).  The inhaler

provided relief from symptoms.  (R. at 35).  Plaintiff admitted to ongoing use of cigarettes – up

to one pack per day.  (R. at 35).  This habit exacerbated Plaintiff's asthma.  (R. at 35).  In

addition, Plaintiff explained that her diabetes and potential sleep apnea left her fatigued.  (R. at

36).

In 2007, Plaintiff had sought treatment for anxiety and depression.  (R. at 36).  Plaintiff

had not sought mental health treatment since, and stated that her mental condition "got a little

better."  (R. at 37).  Plaintiff claimed that she mentioned her psychological state to Dr. Burick,

but that Dr. Burick only asked Plaintiff to inform her if her psychological state deteriorated

significantly.  (R. at 37).

Plaintiff testified that she spent most of her day watching television and sleeping.  (R. at

37, 39, 41).  She contributed very little to completion of household chores, and only occasionally

cooked.  (R. at 38).  Plaintiff did not leave the house often, and did not receive visitors.  (R. at

38).  She did claim to get along "okay" with others.  (R. at 39).  Plaintiff would sometimes go

outside to watch her children swim in the pool at her house.  (R. at 39).

Following Plaintiff's testimony, the ALJ asked the vocational expert[5] whether a

hypothetical person of Plaintiff's age, educational background, and work experience could

---

[5]      Frances N. Kinley, M.Ed., C.R.C., L.P.C., is a self-employed vocational consultant providing services as an
analyst in worker's compensation, ADA, and Social Security cases.  (R. at 87 – 89).  Ms. Kinley has a Masters of
Education Degree in Rehabilitation Counseling from the Pennsylvania State University, University Park,
Pennsylvania.  (R. at 87 – 89).

engage in a significant number of jobs in existence in the national economy if limited to light, unskilled work, only occasional lifting and carrying of twenty pounds, frequent lifting and carrying of no more than ten pounds, standing and walking for no more than four hours of an eight hour work day, sitting for no more than six hours, transitioning between sitting and standing every thirty minutes, only occasional pushing and pulling with the lower left extremity, no climbing of ladders, ropes, or scaffolds, no kneeling or crawling, only occasional climbing of ramps and stairs, only occasional balancing, stooping, and crawling, and no concentrated exposure to extreme heat and humidity, fumes, odors, dust, gases, and poor ventilation. (R. at 43). The vocational expert responded that such a person would be capable of working as an "office helper," with 150,000 such positions available in the national economy, as an "information clerk," with 70,000 positions available, or as a "packing line worker," with 75,000 positions available. (R. at 44).

The ALJ then altered the hypothetical, asking the vocational expert whether jobs would exist if the hypothetical person were instead limited to sedentary level work. (R. at 44). The vocational expert replied that such a person would be capable of working as an "order clerk," with 35,000 positions available, as a "charge account clerk," with 45,000 positions available, or as a "ticket checker," with 50,000 positions available. (R. at 44).

The ALJ went on to ask whether a hypothetical individual would be able to find work if he or she would be off task approximately twenty percent of any given work day. (R. at 44). The vocational expert explained that no full-time jobs would be available to such a person. (R. at 44). Similarly, if a hypothetical person would miss at least two days of work per month, he or she would not be able to sustain full-time employment. (R. at 45).

**IV.   STANDARD OF REVIEW**

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F. 2d 581, 583 (3d Cir. 1986).   When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.  20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003).   If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues.  42 U.S.C. §§ 405(g)[6], 1383(c)(3)[7]; *Schaudeck v.*

---

[6]      Section 405(g) provides in pertinent part:

Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a

*Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999).  Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole.  *See* 5 U.S.C. §706.  The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact.  *Burns v. Barnhart,* 312 F. 3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion.  *Ventura v. Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive.  42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390.  When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered.  *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947).  The court will not affirm a determination by substituting what it considers to be a proper basis.  *Chenery*, 332 U.S. at 196 – 97.  Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable

---

civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[7]      Section 1383(c)(3) provides in pertinent part:
         The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

regulatory interpretations that an agency manifests in the course of making such findings."
*Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 91 (3d. Cir. 1986).

## V.    DISCUSSION

In his decision, the ALJ concluded that Plaintiff suffered medically determinable severe impairments in the way of degenerative disc disease of the lumbar spine, asthma, chronic obstructive pulmonary disease, diabetes mellitus, and obesity.  (R. at 14).  As a result of said impairments, the ALJ determined that Plaintiff would be limited to only light, unskilled work, lifting and carrying twenty pounds occasionally, lifting and carrying ten pounds frequently, standing and walking no more than four hours of an eight hour work day, sitting no more than six hours, engaging in no more than occasional pushing and pulling with the left lower extremity, no kneeling, crawling, or climbing of ladders, ropes, or scaffolds, no more than occasional balancing, stooping, crouching, and climbing of ramps and stairs, and no exposure to extreme heat and humidity, fumes, odors, dusts, gases, and poor ventilation.  (R. at 16).  The ALJ concluded that Plaintiff was nonetheless capable of obtaining substantial gainful employment based upon the testimony of the vocational expert.  (R. at 19 – 20).  Plaintiff was not, therefore, found to be eligible for SSI.  (R. at 20).

Plaintiff objects to this decision by the ALJ, claiming that he erred in failing to find "severe" mental impairment at Step 2, in failing to give full credit or controlling weight to the findings of Drs. Abul-Ela and Razzak, and in failing to give full credit to the subjective complaints of pain and limitation made by Plaintiff.  (ECF No. 11 at 8 – 15).  Defendant counters that the ALJ adequately supported his decision with substantial evidence from the record, and should be affirmed.  (ECF No. 13 at 7 – 15).  The Court agrees with Defendant.

With respect to Plaintiff's first argument of error by the ALJ at Step 2, the court notes that "severe" impairment is defined by regulation as "any impairment . . . which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). In practice, the ALJ's analysis at Step 2 to determine whether or not an alleged impairment is "severe," is no more than a "*de minimis* screening device to dispose of groundless claims." *Magwood v. Comm'r of Soc. Sec.*, 417 Fed. App'x 130, 132 (3d Cir. 2008) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F. 3d 541, 546 (3d Cir. 2003)). Impairment is not "severe" where the record demonstrates only "slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Id.*

Step 2 merely serves a minimal gate-keeping function, and Plaintiff's burden is not an exacting one. *McCrea v. Comm'r of Soc. Sec.*, 370 F. 3d 357, 360 (3d Cir. 2004) (citing S.S.R. 85-28, 1985 WL 56856 at *3). Reasonable doubts regarding the evidence should be construed in the light most favorable to the claimant. *Newell*, 347 F. 3d at 547. Further, the use of Step 2 as a vehicle for the denial of benefits should, "raise a judicial eyebrow," and deserves "close scrutiny." *McCrea*, 370 F. 3d at 360 – 61.

The present case is factually distinguishable from both *Newell* and *McCrea*, however. Here, the ALJ did not base his denial squarely upon his Step 2 analysis. He continued on with his discussion of the record, denying Plaintiff SSI at Step 5. This case does not, therefore, warrant the same level of scrutiny. Regardless, the court must look to whether the ALJ provided substantial evidence as justification for his decision – whether he stopped at Step 2 or continued through Step 5. *Kirk v. Comm'r of Soc. Sec.*, 177 Fed. App'x 205, 207 (3d Cir. 2006); *McCartney v. Comm'r of Soc. Sec.*, 2009 WL 1323578 at *13 – 16 (W.D. Pa. May 8, 2009).

14

The court notes that records of mental health treatment during the relevant period under consideration are non-existent[8]. (R. at 14). There is little to no mention of psychological issues, in any respect. Plaintiff did not take any psychotropic medications. (R. at 14). Her primary care physician – Dr. Burick – did not prescribe any mental health treatment for Plaintiff when allegedly informed of her issues, and instead asked Plaintiff to bring such issues to her attention only if there was significant deterioration. (R. at 14). None of the other consulting or examining physicians made any notable findings with regard to Plaintiff's mental state. (R. at 14). State agency evaluator Dr. Jonas found that Plaintiff's mental health history did not warrant a finding of severe impairment in this area. (R. at 14). Plainly, no evidence of even minimal limitation attributable to Plaintiff's mental state was provided by Plaintiff – even within her own testimony. The ALJ's decision not to include any severe mental impairment at Step 2 was clearly supported by substantial evidence.

Plaintiff next argues that the ALJ's RFC assessment and hypothetical question to the vocational expert were flawed due to a failure to properly credit the opinions of Drs. Abul-Ela and Razzak. Plaintiff asks this court to apply the treating physician doctrine to this case. This doctrine provides that treating physicians' opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the physicians' findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)).

---

[8]     Plaintiff received treatment for adjustment disorder with mixed anxiety and depression between June and October of 2007 at Human Services Center of New Castle, Pennsylvania. (R. at 183 – 195). As pointed out by Defendant, these records are dated two years prior to the beginning of the relevant period for determining disability in this case: December 8, 2009. (ECF No. 13 at 7). Regardless, Plaintiff was discharged from treatment after she "attended therapy sessions" and her "goals were met." (R. at 183).

However, the Court declines to do so, because neither Dr. Abul-Ela nor Dr. Razzak was a treating physician. Neither examined Plaintiff on more than one occasion. A one-time examination does not generate the longitudinal record and experience with a claimant's condition which justifies the provision of great weight to a medical opinion. The limited experiences of these two doctors with Plaintiff's conditions notwithstanding, it has also been held that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (quoting *Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)). A showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a physician's opinion outright, or accord it less weight. *Brownawell*, 554 F. 3d at 355. Moreover, a medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer*, 186 F. 3d at 430 (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)).

In the present case, the ALJ explained that he attributed less weight to the limitations findings of Drs. Abul-Ela and Razzak due to inconsistencies with other objective medical evidence on record. Specifically, the ALJ noted that Plaintiff was never recommended for more than routine, conservative treatment measures such as dieting, weight loss, exercise, physical therapy, a back brace, and injections. (R. at 17 – 19). Yet, Plaintiff was not fully compliant with even these limited measures, failing to ever attend physical therapy and never attempting to obtain injections. (R. at 17 – 19). There were also significant periods of time between attempts to seek treatment from pain specialists, and Plaintiff did not follow through with treatment under either Dr. Wrightson or Dr. Razzak. (R. at 17 – 19).

Dr. Abul-Ela made a number of limitations findings which were fairly severe, yet were not echoed by his own examination findings in his narrative statement. (R. at 17 – 19). These

limitations findings were also directly contradicted by Dr. Fox in his Physical RFC assessment. (R. at 17 – 19).  The opinions of state agency evaluators such as Dr. Fox "merit significant consideration."  *Chandler*, 667 F. 3d at 361.  Additionally, Plaintiff fails to indicate which findings made by Dr. Razzak were not accommodated in the ALJ's RFC and hypothetical. Plaintiff only asserts that Dr. Razzak's statement that Plaintiff's pain was alleviated by "rest" supports Plaintiff's subjective claim that she needs to lie down several times a day due to pain. This is a tenuous connection, at best.  Her need to "rest" could just as easily be accommodated by the ALJ's provision of an option to alternate between sitting and standing every thirty minutes while at work.  Plaintiff provides no evidence to the contrary.

Lastly, Plaintiff argues that her subjective complaints were improperly denied full weight by the ALJ when formulating his RFC assessment and hypothetical question to the vocational expert.  Specifically, Plaintiff asserts that her alleged need to lie down throughout the day due to significant back, leg, and hip pain was supported by the recognition of such pain by the doctors on record.  The United States Court of Appeals for the Third Circuit has held that an ALJ should accord subjective complaints of pain similar treatment as objective medical reports, and weigh the evidence before him.  *Burnett v. Comm'r of Soc. Sec.*, 220 F. 3d 112, 122 (3d Cir. 2000). Serious consideration must be given to subjective complaints of pain where a medical condition could reasonably produce such pain.  *Mason v. Shalala*, 994 F. 2d 1058, 1067-68 (3d Cir. 1993). The ALJ is required to assess the intensity and persistence of a claimant's pain, and determine the extent to which it impairs a claimant's ability to work.  *Hartranft v. Apfel*, 181 F. 3d 358, 362 (3d Cir. 1999).  This includes determining the accuracy of a claimant's subjective complaints of pain.  *Id.*  While pain itself may be disabling, and subjective complaints of pain may support a disability determination, allegations of pain suffered must be consistent with the objective

medical evidence on record.  *Ferguson v. Schweiker*, 765 F. 2d 31, 37 (3d Cir. 1985); *Burnett*, 220 F.3d at 122.  The ALJ met this standard, here.

The Court first notes that none of the physicians prescribed lying down as a manner of treatment for Plaintiff's pain, instead suggesting exercise, weight loss, and physical therapy.  (R. at 17 – 19).  Moreover, the ALJ felt that Plaintiff was not fully credible due to a less than substantial work history – Plaintiff having stopped working many years prior to her allegations of disabling impairments.  (R. at 17 – 19).  The ALJ also looked to the routine, conservative nature of Plaintiff's recommended treatment, and her lack of follow-through with treatment recommendations as evidence that her impairment was not as severe as alleged.  (R. at 17 – 19).  This was sufficient to constitute substantial evidence in support of the ALJ's decision to accord lessened weight to Plaintiff's subjective complaints.

**VI.   CONCLUSION**

Based upon the foregoing, the RFC assessment, hypothetical question, and ultimate decision by the ALJ to deny benefits were adequately supported by substantial evidence from Plaintiff's record.  Reversal or remand of the ALJ's decision is not appropriate.  Accordingly, Plaintiff's Motion for Summary Judgment is denied, Defendant's Motion for Summary Judgment is granted, and the decision of the ALJ is affirmed.  Appropriate Orders follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: June 13, 2013
cc/ecf: All counsel of record.